UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY MITCHELL NAYLOR, | No. 2:20-cv-672-JAM-EFB P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| BRANDON PRICE, | |
| Respondent. | |

Petitioner, who is committed civilly to the state hospital and proceeds herein without counsel, brings an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. First, he argues that his due process rights were violated when the state court, in denying his petition for release, declined to appoint counsel and mental health experts to aid him with his petition. Second, he contends that his constitutional rights were violated by the state appellate court's delay in adjudicating his appeal of the foregoing claim regarding appointment of counsel and experts. Respondent has filed an answer (ECF No. 12) and petitioner, after an extension of time, has filed a traverse (ECF No. 18).

For the reasons stated hereafter, the petition should be denied.

<u>SEXUALLY VIOLENT PREDATOR ACT ("SVPA")</u>

The petition presents two purely legal questions and, consequently, the court finds it unnecessary to recount the factual background leading to petitioner's confinement and subsequent

1

petition for release. The court will, however, for the sake of context, reproduce the state appellate court's summation of the SVPA under which petitioner was confined:

> Under the Sexually Violent Predator Act (§ 6600, et. seq.) (SVPA), a person who is found to be a sexually violent predator is subject to involuntary indefinite commitment for treatment and confinement. (§§ 6603, subds. (a), (e) & (f), 6604, 6604.1.) "'Sexually violent predator' means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) As noted by our high court, the SVPA "was designed to ensure that the committed person does not 'remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.'" (*People v. McKee* (2010) 47 Cal.4th 1172, 1186 (*McKee*).)
>
> Former section 6605 required a "current examination" of the committed person's mental condition once a year and an annual report by DSH. The report must "include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community." (Former § 6605, subd. (a); current § 6604.9, subds. (a) & (b).)
>
> Two provisions established procedures whereby a committed person could obtain review to determine if civil confinement is still necessary, former sections 6605 (current §§ 6604.9, subd. (d) & 6605) and 6608. Under former section 6605, if DSH determined a committed person no longer met the criteria for being an SVP, DSH was mandated to authorize the committed person to petition the court for unconditional discharge or conditional release. (Former § 6605, subd. (b); current § 6604.9, subd. (d).)
>
> Former section 6608 governs this case. When DSH has not authorized a petition, a committed person could, nevertheless, petition the court for conditional release and subsequent unconditional discharge under former section 6608, subdivision. (a).[1] In his or her petition, the committed person must "allege facts

---

[1] [footnote five in original text] Former section 6608, subdivision (a), in effect at the time of Naylor's petition and the trial court's denial thereof, provided: "Nothing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release or an unconditional discharge without the recommendation or concurrence of the Director of State Hospitals. If a person has previously filed a petition for conditional release without the concurrence of the director and the court determined, either upon review of the petition or following a hearing, that the petition was frivolous or that the committed person's condition had not so changed that he or she would not be a danger to others in that it is

. . . that will show he [or she] is not likely to engage in sexually violent criminal behavior due to his [or her] diagnosed mental disorder without supervision and treatment in the community . . . ." (*People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1407 (*Reynolds*).)

Upon receipt of a section 6608 petition, "the court 'shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing.' " (*Reynolds*, *supra*, 181 Cal.App.4th at p. 1407.) The term "frivolous" is not defined in the SVPA. However, our high court has adopted a definition for section 6608, subdivision (a), relying on the test for frivolous appeals. "A frivolous petition is one that 'indisputably has no merit.'" (*McKee*, *supra*, 47 Cal.4th at p. 1192; *People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1071 (*LaBlanc*).) "Under that standard, a petition is not frivolous if it makes a colorable showing of entitlement to relief." (*LaBlanc*, at p. 1070.) On the other hand, a petition is subject to dismissal as frivolous if it lacks a factual or legal bases; a petition must make at least a prima facie showing to be entitled to a hearing. (*Reynolds*, *supra*, 181 Cal.App.4th at p. 1410.)

To make the threshold determination as to whether the petition is frivolous, the trial court reviews the petition and supporting attachments to determine if the committed person's position has "*some merit* on the issue of whether he or she may qualify for conditional release." (*People v. Olsen* (2014) 229 Cal.App.4th 981, 996 (*Olsen*), italics added [by appellate opinion].) In making its threshold determination of frivolousness, the trial court is not limited to considering the face of the petition and its supporting attachments, but may also review the DSH annual report, even if it is not attached to the petition. (*Id.* at p. 996.) If the trial court summarily denies the petition based upon frivolousness, the committed person may seek appellate review of the denial order (*id.* at p. 994), as Naylor has done here.

After setting forth the trial court's authority to make a threshold determination concerning whether the petition is frivolous, former section 6608, subdivision (a), continued: "The person petitioning for conditional release and unconditional discharge under this subdivision shall be entitled to assistance of counsel." (Former § 6608, subd. (a), see fn. 5, *ante*.) Thereafter, the statute provided that

---

not likely that he or she will engage in sexually violent criminal behavior if placed under supervision and treatment in the community, then the court shall deny the subsequent petition unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted. *Upon receipt of a first or subsequent petition from a committed person without the concurrence of the director, the court shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing. The person petitioning for conditional release and unconditional discharge under this subdivision shall be entitled to assistance of counsel.* The person petitioning for conditional release or unconditional discharge shall serve a copy of the petition on the State Department of State Hospitals at the time the petition is filed with the court." (Italics added [by appellate opinion].)

> the court shall hold a hearing on a nonfrivolous petition "to determine whether the person committed would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community." (Former § 6608, subd. (d).)
>
> The rights of a person subject to the SVPA are listed in section 6603, subdivision (a), which states in pertinent part: "A person subject to this article [Article 4; Sexually Violent Predators] *shall be entitled to a trial by jury, to the assistance of counsel, to the right to retain experts* or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports. *In the case of a person who is indigent, the court shall appoint counsel to assist him or her, and, upon the person's request, assist the person in obtaining an expert* or professional person to perform an examination or participate in the trial on the person's behalf." (Italics added [in appellate opinion].)

ECF No. 11-9 at 5-8.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

I. <u>Applicable Statutory Provisions</u>

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong

/////

4

(d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

A. "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether . . . the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

B. "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This

5

includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[2] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[3] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[4] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins,*

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[4] *Faretta v. California*, 422 U.S. 806 (1975).

539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 1399.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Harrington*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Harrington*, 562 U.S. at 101-102.

C. "Unreasonable Determination of The Facts"

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the

/////

prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), *cert. denied*, 543 U.S. 1038 (2004). Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). *Id.* at 1001; accord *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II. <u>The Relationship Of § 2254(d) To Final Merits Adjudication</u>

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre-AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir.

8

2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736 37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap. Accordingly, "[a] holding on habeas review that a state court error meets the 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

I. <u>Appointment of Counsel/Medical Experts</u>

Petitioner, as noted *supra*, argues that he was entitled to appointed counsel and mental health experts' assistance in presenting his petition for release.

/////

/////

/////

A. State Court Decision

The state court of appeal rejected this claim:

> Defendant contends that he was entitled to the assistance of counsel in obtaining release under former section 6608, including assistance in preparing the section 6608 petition. The People's interpretation of section 6608 is that "a person petitioning for release under its provisions is entitled to the assistance of counsel *with respect to a hearing on a nonfrivolous petition*." Thus, according to the People, section 6608 must be read as providing a right to counsel "contingent upon the person's filing of a nonfrivolous petition . . . ." We agree with the People.
>
> As in any case involving statutory interpretation, "'[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.'" (*Sierra Club v. Superior Court* (2013) 57 Cal. 4th 157, 165-166.) If the statutory language may reasonably be given more than one interpretation, courts may consider extrinsic aids, including the purpose of the statute, the evils to be remedied, public policy, and the statutory scheme encompassing the statute. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265; accord *Sierra Club*, at p. 166 ["If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy"].)
>
> **Right to Counsel**
>
> Both section 6603, subdivision (a), which outlines the rights of a person subject to the SVP article, and former section 6608, subdivision (a), which applies to a petition for conditional and unconditional release without a DSH authorization, provide a right to counsel. As noted, section 6603, subdivision (a), states that "[a] person subject to this article [Article 4; Sexually Violent Predators] shall be entitled to . . . the assistance of counsel." That subdivision goes on to state that, "[i]n the case of a person who is indigent, the court shall appoint counsel to assist him or her . . . ." Former section 6608, subdivision (a), provided that a "person petitioning for conditional release and unconditional discharge under this subdivision shall be entitled to assistance of counsel." But in the preceding sentence, former section 6608, subdivision (a), also provided that the trial court could summarily deny a petition filed without the recommendation or concurrence of DSH if it determined the petition was frivolous. No language in the former statutory

10

> scheme provided that a committed person had the right to appointed counsel upon the filing of such a petition or for the purpose of establishing that the petition was nonfrivolous. Nor, on the other hand, was there statutory language clearly indicating that the right to appointed counsel attached only after the court determined the petition to be nonfrivolous and/or scheduled the matter for a hearing. Thus, the statute was ambiguous as to the timing of when the right to appointed counsel was to attach.[5]
>
> The People argue placement of the language in former section 6608 concerning the assistance of counsel indicated the Legislature intended that counsel be appointed only after a trial court makes a determination that the petition is nonfrivolous. As noted, the language related to the right to the assistance of counsel comes after the language describing the trial court's review of the petition to determine if it is frivolous. (See fn. 5, *ante*.) From this, the People argue, "[a] reasonable interpretation of the statute is that a person petitioning for release under its provisions is entitled to the assistance of counsel with respect to a hearing on a nonfrivolous petition."
>
> We agree with this interpretation of the statute, because it comports with the purpose of the threshold determination of frivolousness authorized by the Legislature.[6] "The apparent rationale for the court's threshold determination of frivolousness is 'to deter multiple unsubstantiated requests and to reduce the administrative burden that might otherwise occur. . . .'" (*LaBlanc*, *supra*, 238 Cal.App.4th at p. 1070, quoting *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1148, fn. 14 (*Hubbart*) & *Olsen*, *supra*, 229 Cal.App.4th at p. 993.) A requirement to appoint counsel whenever a committed person makes a petition without DSH consent regardless of whether it is frivolous would be at odds with the purpose of reducing unsubstantiated petitions and would result in an unwarranted increase in the associated administrative burdens.

---

[5] [footnote six in original text] In 2014 (Stats. 2014, ch. 877, § 1, eff. Jan. 2, 2015) the Legislature amended the sentence in section 6608, subdivision (a), which had read, "The person petitioning for conditional release under this subdivision shall be entitled to assistance of counsel." It now reads: "The person petitioning for conditional release under this subdivision shall be entitled to assistance of counsel *in all hearings under this section*." (§ 6608, subd. (a), italics added [by appellate opinion].) The additional language shown in italics clarified the ambiguity by specifying the point in the petition proceedings in which the right to appointed counsel attaches. Former and current section 6608 made a distinction between the threshold issue of frivolousness and the factual question of whether the committed person qualifies for conditional release; the statute requires a separate determination of each issue. (*Olsen*, *supra*, 229 Cal.App.4th at p. 998.) As amended, the statute makes clear that the right to counsel attaches for hearings, not before a court summarily makes a determination on the issue of frivolousness without a hearing.

[6] [footnote seven in original text] However, we note that due process may have required the appointment of counsel if the court set a hearing on the issue of frivolousness or otherwise allowed the prosecution to weigh in on that issue.

Naylor points out that the sentence granting a committed person the right to counsel refers to "the person petitioning . . . under this subdivision." From this, he argues that a committed person has the right to counsel for all proceedings under former section 6608, subdivision (a), including the preparation and filing of a petition. We are not convinced that the words "the person petitioning" requires that the right to counsel attaches at the moment of filing the petition; a "petitioner" remains a petitioner throughout the proceedings, so the reference to the person petitioning could reference the point in time after the threshold frivolousness determination is made.

We realize our view of when the statutory right to counsel attaches is not consistent with that of Division Five of the Court of Appeal, First District, discussed in *People v. Smith* (2013) 216 Cal.App.4th 947 (*Smith*). Smith was decided approximately two weeks after briefing closed in the instant case.[7] In Smith, the court held that the trial court erred in determining Smith's petition was frivolous and remanded the matter back to the trial court for a hearing. (*Id.* at p. 953.) In addition to arguing that his petition was nonfrivolous, Smith also argued he was entitled to both the appointment of counsel and an expert before the trial court made its frivolousness determination. Regarding this argument, the Smith court wrote: "In light of our conclusion that the case must be remanded for a full section 6608 hearing, we need not decide appellant's assertions of error regarding the trial court's failure to appoint counsel and an independent expert. We observe, however, that section 6608, subdivision (a) provides, 'The person petitioning for conditional release and unconditional discharge under this subdivision shall be entitled to assistance of counsel,' and the California Supreme Court stated in [*McKee*, *supra*, 47 Cal.4th at p. 1193]: 'Given that the denial of access to expert opinion when an indigent individual petitions on his or her own to be released may pose a significant obstacle to ensuring that only those meeting SVP commitment criteria remain committed, we construe section 6608, subdivision (a), read in conjunction with section 6605, subdivision (a), to mandate appointment of an expert for an indigent SVP who petitions the court for release.' " (*Smith*, at p. 953.) The *Smith* court then went on to note that, in any event, as the People conceded, "'[u]pon remand, appellant will be entitled to an attorney to assist him at the hearing . . . . Similarly, once the court sets the section 6608 hearing, appellant is entitled to the appointment of an expert.'" (*Smith*, at p. 953.)

We do not agree with the dicta in *Smith*. As we have said, the statutory language is ambiguous. Moreover, the *Smith* court did not consider the underlying purpose of the threshold determination of frivolousness — "to deter multiple unsubstantiated requests and to reduce the administrative burden that might otherwise occur. . . ." (*LaBlanc*, *supra*, 238 Cal.App.4th at p. 1070, quoting *Hubbart*, supra, 19 Cal.4th at p. 1148, fn. 14 & Olsen, supra, 229 Cal.App.4th at p. 993.)

---

[7] [footnote eight in original text] No request for supplemental briefing was made and Smith was never otherwise called to our attention by either party.

**Right to an Expert**

Naylor contends that he was entitled to the appointment of an expert in addition to appointment of counsel even before the court made the threshold determination of whether the petition was nonfrivolous. He relies on *McKee*, *supra*, 47 Cal.4th 1172, which held that an indigent SVP who petitions the court for release is entitled to the appointment of an expert in section 6608 proceedings. (*McKee*, at p. 1193.) As our high court noted, the appointment of an expert can help "ensure that the commitment lasts no longer than is necessary." (*Ibid*.)

However, there is nothing in the SVPA scheme that mandates the trial court to make the appointment immediately upon the filing of an unrepresented committed person's request and section 6608 petition. Nor did the *McKee* court suggest immediate appointment of an expert is required. Section 6603, subdivision (a), does say, "[i]n the case of a person who is indigent, the court shall appoint counsel to assist him or her, and, *upon* the person's request, assist the person in obtaining an expert or professional person to perform an examination or participate in the trial on the person's behalf." (Italics added [by appellate opinion].) However, we do not read the word "upon" to mandate immediate appointment upon the filing of a section 6608 petition and request for the appointment of an expert before a court determines whether the petition is frivolous. The immediate appointment of an expert regardless of whether the petition for release is frivolous would only add to the administrative burdens in a way we do not think was intended by the Legislature. Moreover, section 6603, subdivision (a) appears to focus more on the proceedings that take place prior to the original SVP commitment. In pertinent part, that provision states: "A person subject to this article [Article 4; Sexually Violent Predators] *shall be entitled to a trial by jury*, to the assistance of counsel, to the right to retain experts . . . ." Beginning the rights with the right to a jury trial, then listing the right to counsel and experts and not cross-referencing section 6608 or proceedings post-trial on the initial commitment strongly suggests subdivision (a) of section 6603 was intended to relate to rights that attach pre-commitment.

**Due Process**

Naylor asserts that interpreting former section 6608, subdivision (a), to attach the right to counsel only after a court determines the petition is nonfrivolous violates due process. He argues that an in propria persona committed person needs the assistance of counsel "to avoid filing a frivolous petition for release" because "individuals who are not schooled in the law, and often lack formal education, cannot reasonably be expected to prepare competent pleadings." He further argues that, "[w]ithout the assistance of counsel and a mental health expert, [he] will be condemned to perpetual civil confinement at the whim of [DSH]. It is absurd to presume that an uneducated layman who is incarcerated, and may suffer from a mental disorder, can prepare a competent petition for release and marshal the evidence to support the petition." According to Naylor, without counsel and an

13

expert to assist in the preparation of the petition, the opportunity for freedom offered by former section 6608 is meaningless.[8]

Civil commitment "is constitutional so long as it is accompanied by the appropriate constitutional protections." (*McKee*, *supra*, 47 Cal.4th at p. 1188.) In *McKee*, the petitioner contended that the trial court's discretion to deny a petition as frivolous without a hearing denied due process. (*Id.* at p. 1192.) Our high court disagreed, stating: a "frivolous petition is one that 'indisputably has no merit.' " (*Ibid.*) After noting that the petitioner cited no authority for the proposition that due process was violated by not granting such a hearing, the court wrote: "The fact that the statute gives the court the authority to deny such petitions does not, of itself, serve as an obstacle to the primary due process goal of ensuring that only those individuals who continue to meet SVP criteria will remain involuntarily committed." (*Ibid.*, fn. omitted.) While this observation does not speak directly to the issue before us, the court's recognition that due process does not require a hearing on the issue of frivolousness would seem to signal that there is no due process right to the appointment of counsel for purposes of the trial court's threshold frivolousness review in every case.

Naylor argues that in deciding his due process claim, we should balance the factors set forth by our high court in *People v. Otto* (2001) 26 Cal.4th 200 (*Otto*). The People agree that the *Otto* factors should be considered, but arrive at a different balance than does Naylor.

In *Otto*, our high court upheld the admissibility of victims' hearsay statements in SVP commitment proceedings over a due process objection. (*Otto*, *supra*, 26 Cal.4th at p. 203.) It is important to note that, before discussing the factors the parties cite here, the court in *Otto* observed, "[a] defendant challenging the statute on due process grounds carries a *heavy burden*. Courts have a ' "duty to uphold a statute unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity." ' " (Id. at pp. 209-210, italics added [by appellate court opinion].) It is also important to note that due process is "a flexible concept that calls for ' "such procedural protections as the particular situation demands." ' " (*People v. Hardacre* (2001) 90 Cal.App.4th 1392, 1399 (*Hardacre*), quoting *People v. Scott* (1998) 64 Cal.App.4th 550, 561.)

In determining what process is due, the *Otto* court identified four relevant factors:

---

[8] [footnote nine in original text]  Naylor also argues that, even if he "had been able to come forward with specific facts in his petition to demonstrate that his condition had changed, it was unlikely that the trial court would have given any weight to his self-serving declaration which lacked the support of the opinion of a mental health expert." This situation is not before us, although it is worth emphasizing here that a petitioner need only establish his or her petition has "some merit" (*Olsen*, *supra*, 229 Cal.App.4th at 996), and the petition need only make "a colorable showing of entitlement to relief." (*LaBlanc*, *supra*, 238 Cal.App.4th at p. 1070.)

14

"(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." (*Otto*, *supra*, 26 Cal.4th at p. 210.)

First, the private interests that will be affected here impact on Naylor's liberty, the stigma of continuing to be classified as an SVP, and subjection to unwanted treatment. (*See Otto*, *supra*, 26 Cal.4th at p. 210.) However, those interests should be accorded less significance after the defendant already has been found to be an SVP beyond a reasonable doubt. (*See People v. Majors* (1998) 18 Cal.4th 385, 411 [noting that a criminal defendant's fundamental liberty interest is " ' "substantially diminished" ' " by a guilty verdict]; *Hardacre*, *supra*, 90 Cal.App.4th at p. 1400 [noting, under an earlier version of the SVPA, that, although "the Legislature has provided for a hearing to evaluate the SVP's mental state one year into the two-year commitment, the SVP does not stand in the same shoes as he did at the time of the initial commitment proceeding"].)

Second, the factor addressing the risk of an erroneous deprivation of Naylor's liberty interests through the procedures used does not weigh in his favor. Naylor unpersuasively argues that the trial court here "created a substantial risk of an erroneous result" by relying on the DSH annual report, because DSH was Naylor's "custodian," "holding him against his will" and DSH had an "adversarial relationship" with Naylor. In our view, reviewing the annual report, which was only six months old, actually decreased the risk of an erroneous result on the frivolousness determination. It hardly seems possible that there was a true risk of an erroneous determination of frivolousness given that Naylor's petition acknowledged DSH did not consent to the petition, the current annual report discussed defendant's mental status and need for programing, and Naylor failed to say anything at all in his petition rebutting the report's finding as to his current mental status and need for treatment.

On the second factor, Naylor also argues the risk of an erroneous deprivation of a committed person's liberty interest is decreased when an attorney assists in filing a petition. We assume that this argument relates the probable value component of the second *Otto* factor. (*Otto*, *supra*, 26 Cal.4th at p. 210, italics added.) In our view, the probable value in cases like Naylor's is nil. An attorney cannot make a frivolous petition like the one filed by Naylor here nonfrivolous. Moreover, it is important to remember that a committed person need only establish the petition has " ' "some merit." ' " (*Olsen*, *supra*, 229 Cal.App.4th at p. 996.) He need only make "a colorable showing of entitlement to relief." (*LaBlanc*, *supra*, 238 Cal.App.4th at p. 1070.) The showing required to get one's foot in the door is not onerous.

Related to the second factor, Naylor suggests that he is entitled to counsel because he lacks education and training and suffers from mental illness. But a petition for release from SVP confinement is analogous to habeas corpus proceedings (*Reynolds*, *supra*, 181 Cal.App.4th at p. 1407), and like an SVP under former section 6608, a self-represented prisoner petitioning for habeas relief is required to make a threshold showing to avoid summary denial of their petition (see *People v. Romero* (1994) 8 Cal.4th 728, 737). Counsel need not be appointed to help the prisoner file the petition for habeas corpus. As our high court observed long ago in addressing the obligation of prisoners in petitioning for a writ of habeas corpus, "[w]e are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned . . . . This procedural requirement does not place upon an indigent prisoner who seeks to raise questions of the denial of fundamental rights in propria persona any burden of complying with technicalities; it simply demands of him a measure of frankness in disclosing his factual situation." (*In re Swain* (1949) 34 Cal.2d 300, 304.)

Third, the government's interest, including the fiscal and administrative burdens, do not favor Naylor's position. The state has a legitimate financial interest and an interest in preserving its scarce justice system resources. And, as we have noted, the purpose of the very provision at issue here is " ' "to deter multiple unsubstantiated requests and to reduce the administrative burden that might otherwise occur. . . ." ' " (*LaBlanc*, *supra*, 238 Cal.App.4th at p. 1070, quoting *Hubbart*, *supra*, 19 Cal.4th at p. 1148, fn. 14 & *Olsen*, *supra*, 229 Cal.App.4th at p. 993.) Allowing a trial court to make a determination that a petition is nonfrivolous before the right to counsel attaches preserves justice system resources for section 6608 petitions that have some merit as well as the myriad other matters filed in our courts involving appointed counsel.

Fourth, providing counsel after the trial court's determination of frivolousness or upon the court determining a hearing should be had does not impede the dignitary interest in being informed of the nature, grounds, and consequences of the SVP commitment proceeding, nor does it "disable" Naylor from presenting his side of the story before a responsible government official. True, it may not facilitate a committed person's ability to tell his or her side of the story at the threshold stage of the frivolousness determination, but it does not "disable" a committed person from doing so. And nothing prevented Naylor from trying again, an endeavor that was made substantially easier by the trial court's written ruling outlining what was wrong with his petition.

Defendant has not carried his "heavy burden" of establishing a due process violation. (*Otto*, *supra*, 26 Cal.4th at p. 209.) The *Otto* factors do not cut in favor of the appointment of counsel or an expert to assist in making the petition. Due process is not violated by attaching the right to counsel after a trial court determines that the petition is nonfrivolous.

/////

16

ECF No. 11-9 at 8-18. Petitioner presented this same claim to the California Supreme Court (ECF No. 1 at 17) and it was summarily denied (ECF No. 11-10).

B. Analysis

Respondent argues that this claim should be denied because petitioner has failed to identify any Supreme Court authority that has "squarely confronted release procedures for a person confined on a finding that he is a [Sexually Violent Predator] . . . ." ECF No. 12 at 1. Under AEDPA, federal habeas relief is available only where the relevant state court decision (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *See* § 2254(d)(1).

As an initial matter, this court may not second-guess the state court's interpretation of the SVPA. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, the only question is whether the state appellate court's decision was contrary to or involved an unreasonable application of Federal law as determined by the United States Supreme Court. Respondent argues that there are no cases on point and, after conducting its own review, this court agrees. To be sure, the Supreme Court has had cause to review state civil commitment procedures, like the SVPA. *See, e.g.*, *Addington v. Texas*, 441 U.S. 418 (1979); *Foucha v. Louisiana*, 504 U.S. 71 (1992); *Kansas v. Hendricks*, 521 U.S. 346 (1997). None of the relevant Supreme Court case law directly stands for the proposition that appointment of counsel or mental experts is mandated where a civilly committed person files a petition for release, however. *See Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (a state court decision cannot be contrary to or an unreasonable application of federal law when no clearly established federal law "squarely addresses" the relevant issue). Perhaps most crucially, petitioner has failed to carry *his burden* of pointing to any cases indicating that such clearly established federal law exists. *See Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996) (noting that section 2254(d) "provides that a writ of habeas corpus shall not issue unless *the petitioner* establishes that the state court decision was contrary to clearly established federal law as determined by the United States Supreme Court.") (italics added).

/////

17

II. <u>Delay in Adjudicating Petitioner's Appeal</u>

Petitioner's second claim is quickly disposed of for two reasons. As noted *supra*, he argued, before the state court of appeal, that the delay in adjudicating his appeal was a violation of his due process rights. ECF No. 1 at 62-64. That argument was not raised in his main appellate briefing, however, and appeared only in a separate "motion for calendar preference; alternatively, motion to vacate civil judgment of commitment." *Id.* at 60. And, as noted by the motion's title, was raised only as an alternative argument. It was never, as respondent notes, presented to the California Supreme Court and, thus, not properly exhausted. *See Cooper v. Neven*, 641 F.3d 322, 326 (9th Cir. 2011).

Moreover, even if the claim had been exhausted, the court of appeal's implicit rejection is obvious. And respondent correctly argues that, because no clearly established federal law on this issue exists, such a rejection cannot run afoul of section 2254(d)(1).

## CONCLUSION

For the reasons explained above, the state courts' denial of petitioner's claim was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section

/////

/////

2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: December 9, 2020.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE